

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/27/2012

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 11-33205 |
| WILLIAM BRYAN CRUSBERG § | CHAPTER 7 |
| § | |
| Debtor(s). § | JUDGE ISGUR |
| § | |
| § | |
| CLARK ELDREDGE § | |
| § | |
| Plaintiff(s), § | |
| § | |
| vs. § | ADVERSARY NO. 11-3505 |
| § | |
| WILLIAM BRYAN CRUSBERG § | |
| § | |
| Defendant(s). § | |

## MEMORANDUM OPINION

William Bryan Crusberg's Motion for Summary Judgment, (ECF No. 23), is denied.

### Background[1]

In or about late 2001, Crusberg allegedly approached Clark Eldredge with an investment opportunity. Crusberg was already operating a Blimpie sandwich shop franchise at two locations in Tallahassee, Florida and was interested in opening a third.

During the initial discussions regarding the proposed business opportunity, Elsberg alleges that Crusberg represented that the two Blimpie franchises were at that time, and had been previously, operating at a cash profit. The representations were both oral and in the form of written financial documents. Eldredge alleges that the written documents intentionally

---

[1] This background section is taken primarily from Eldredge's First Amended Complaint, (ECF No. 9). The court views the facts and evidence in the light most favorable to the nonmoving party. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).

overstated the monthly cash flow of the two existing Blimpie franchise locations (known as "Magnolia" and Monroe") in order to induce Eldredge to invest in the business.

Eldredge alleges that, in reliance on these financial statements with respect to existing cash flow, he agreed to form a new company with Crusberg (Elberg, Inc.). Elberg, Inc. acquired from Crusberg the business assets and assumed the liabilities of the two existing Blimpie franchises. Eldredge was the majority shareholder of Elberg, Inc., with 501 shares of common stock out of a total 1,000. Crusberg held the remaining 499 shares.

Crusberg, an accountant by profession, served as accountant for Elberg, Inc. and oversaw all bookkeeping for the company. Eldredge provided financial support for the company, including advances of cash as well as additional loans and guaranties for loans.

Elberg, Inc. incurred substantial losses from the outset.

Eventually, in 2007, Elberg, Inc. and Eldredge filed a lawsuit against Crusberg. The lawsuit was styled *Elberg, Inc. and Clark Eldredge v. William B. Crusberg*, Case No. 2007-CA-1816 in the Circuit Court of the Second Judicial Circuit of Florida (the "Florida Court").

On December 15, 2010, the Florida Court granted summary judgment against Crusberg on Count II (breach of the shareholder agreement). The Florida Court found that Crusberg violated the shareholder agreement by withdrawing funds from the daily cash revenues of Elberg, Inc. and for making personal credit card purchases. The Florida Court entered judgment in the amount of $74,900.13 against Crusberg and in favor of Eldredge, individually.

On February 15, 2011, the Florida Court granted a default judgment against Crusberg on Count III (breach of an agreement to repay Elberg, Inc. after Elberg, Inc. made payments on Crusberg's outstanding loans). The default judgment was entered because Crusberg failed to file responsive pleadings related to Count III and failed to appear at the hearing. The Florida Court

entered final judgment on Count III against Crusberg and in favor of Elberg, Inc. in the amount of $141,385.00.  Elberg, Inc. later assigned this judgment to Eldredge.

Crusberg filed a voluntary petition initiating this Chapter 7 case on April 7, 2011. Eldredge filed this adversary proceeding on October 6, 2011, seeking to have the underlying judgments excepted from discharge.  Eldredge's amended complaint, (ECF No. 9), seeks to have the debts excepted from discharge under § 523(a)(2)(B).

Crusberg filed this Motion for Summary Judgment on July 11, 2012.  (ECF No. 23).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an

adverse party cannot produce admissible evidence to support the fact.[2] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

In order for the debts to be excepted from discharge under § 523(a)(2)(B), Eldredge must demonstrate the debts were obtained by the use of a written statement that: (i) was materially false; (ii) related to Crusberg's or an insider's financial condition; (iii) was reasonably relied on by Elsberg or Elberg, Inc; and (iv) was made or published by Crusberg with the intent to deceive. 11 U.S.C. § 523(a)(2)(B).

Crusberg moves for summary judgment on two separate bases.[3]

### "Intentional Failures to Produce Evidence" and "Duty to Disclose"

These two sections contain baseless arguments that increase the costs of litigation for all involved. Crusberg focuses on two serious allegations: (i) that Eldredge never produced the (allegedly) materially false documents upon which he relied; and (ii) that as part of an overarching plan to hide these documents from Crusberg, Eldredge sent him on a "fishing expedition." (ECF No. 23 at 5-8). Crusberg argues that Eldredge is attempting to prevent him from seeing these documents in advance so as to be able to ambush him at trial. (ECF No. 23 at 6) ("The Plaintiff's intentional failure to produce these documents in the Initial Disclosures or

---

[3] The motion is structured as three separate arguments. The first two, however, are related and overlap in many aspects.

through discovery, while planning to rely on them at trial, is the definition of 'trial by ambush.'").

The first allegation would be the most egregious, if it were true. The documents (those Eldredge allegedly relied upon when deciding to go into business with Crusberg) are the crux of this case. Crusberg is, of course, entitled to these documents. If Eldredge attempted to prevent Crusberg from getting these documents, Crusberg's "trial by ambush" allegation would be valid.

The problem for Crusberg is that Eldredge attached copies of the documents to the First Amended Complaint. (ECF No. 9-1). The amended complaint specifically states the following:

> During the initial discussions regarding the proposed business opportunity, in or about the first two months of 2002, Crusberg represented to Eldredge that the two Blimpie franchises were and had been operating at a cash profit. These representations were made both orally and in writing. *In the course of these discussions, Crusberg provided Eldredge with the statements attached hereto as Exhibit A. . . . In reliance on these financial statements with respect to existing cash flow, Eldredge agreed to form a new company, Elberg, Inc., which acquired from Crusberg the business assets and assumed the liabilities of the two Blimpie franchises.*

(ECF No. 9 at 2) (emphasis added). In other words, the First Amended Complaint identifies the documents Eldredge claims to have relied upon and provides copies of those documents as an attached exhibit. In addition to being readily available online, the First Amended Complaint was served on Crusberg's counsel. (ECF No. 24 at 3).

Furthermore, Crusberg specifically referenced these very documents in the Request for Admissions he sent to Eldredge. (ECF No. 23-3 at 3). Aware of their significance, Crusberg used a request for admission to ensure that they were true and correct copies. (ECF No. 23-3 at 3). As explained in further detail below, Crusberg identifies and discusses these documents in support of his "reasonable reliance" argument—after complaining in the same motion that Eldredge refused to give him these documents.

Crusberg's second allegation (the "fishing expedition") is also serious. (ECF No. 23 at 9) ("Inviting the Defendant to search through seven banker's boxes of irrelevant documents is a 'fishing expedition' the Plaintiff improperly tried to book for the Defendant."). Litigants may not force their opponents to dig through mountains of evidence in search of the few relevant documents hidden amongst the irrelevant ones. This is not what happened here.

It should first be noted that Crusberg is objecting to having to sift through seven banker's boxes of documents. The task does not seem overwhelming.

Crusberg argues that the boxes contain only documents irrelevant to his requests for production (which focus on those documents which induced Eldredge's investment). (ECF No. 23 at 9). This allegation is difficult to sustain given that Crusberg chose not to review the documents. In response to the requests for production, Eldredge offered to either make available, or to allow copies to be made, of the documents in the seven banker's boxes (all of which relate to the failed business venture). (ECF No. 23-1 at 3). From this statement, Crusberg assumes the boxes contain no documents predating the existence of Elberg, Inc. (and, thus, no documents responsive to the requests for production). Crusberg provides no support for his argument. The Court declines to find that the documents were irrelevant when Crusberg has not yet reviewed them.

**"Reasonable Reliance"**

The latter part of Crusberg's motion is reasonable when viewed in isolation from the rest of the summary judgment motion. Crusberg argues that, given the nature of the documents and the overall circumstances surrounding the decision to invest, as a matter of law Eldredge cannot demonstrate that his reliance was reasonable.

The determination of whether a creditor's reliance on a debtor's false written statement was reasonable is made in light of the totality of the circumstances, taking into consideration: (i) previous business dealings between the two parties; (ii) whether there were any warning signs which would have alerted a reasonably prudent investor; (iii) whether minimal investigation would have uncovered the inaccuracies in the debtor's financial statement; and (iv) the creditor's standard practice or the industry's customary standards for evaluating creditworthiness. *See* 4 *Collier on Bankruptcy* ¶ 523.08[2][d] (16th ed.) (citing *In re Coston*, 991 F.2d 257 (5th Cir. 1993); *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995); *First Nat'l Bank v. Pontow*, 111 F.3d 604 (8th Cir. 1997)).

Crusberg fails to establish that no genuine issue of material fact exists as to whether Eldredge's reliance was reasonable. Eldredge and Crusberg disagree, or the Court lacks sufficient information, about the following key issues:

- Whether Eldredge asked Blimpie to verify Crusberg's franchise sales prior to investing in Elberg, Inc. (ECF No. 23-3 at 5).

- Whether Crusberg stopped Eldredge from having an accountant or other examiner look at additional financial documents prior to Eldredge making the decision to invest. (ECF No. 23-3 at 5).

- Whether Crusberg approached Eldredge with the business plan, or whether Eldredge initially approached Crusberg. (ECF No. 23-3 at 4).

- The specific circumstances in which the documents were presented to Eldredge by Crusberg in the effort to induce him to invest.

Crusberg's summary judgment motion must be denied given that there are genuine issues of material fact relating to the question of "reasonable reliance."

**Conclusion**

The Court will enter a separate order in accordance with this Memorandum Opinion.

SIGNED **August 27, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE